Decree may be submitted.

MAY v. MIDWEST REFINING CO. et al.
No. 951.

District Court, D. Maine, S. D.
May 8, 1935.

Wm. B. Skelton, of Lewiston, Me., and Jacob H. Berman, of Portland, Me., for plaintiff.

Verrill, Hale, Booth & Ives, of Portland, Me. (Charles D. Booth, of Portland, Me., of counsel), for defendants.

PETERS, District Judge.

The plaintiff in this case, proceeding under Equity Rule 58 (28 USCA following section 723), has filed interrogatories, 372 in number, to be answered by one or more of the defendants. To most of these interrogatories objections have been made. The only issue now before the court is whether any of the objections shall be sustained.

Determination of this question requires consideration of the issues involved in the suit as well as applicable principles of law.

The plaintiff is a stockholder holding 50 shares in the defendant Midwest Refining Company; all the remaining stock in which company (except 150 shares) is

owned by the defendant Standard Oil Company of Indiana. In 1932, a sale of all the assets of the Midwest Company was made to the other defendants. This sale is attacked by the plaintiff, who alleges, among other things, inadequacy of consideration, breach of duty by the Standard Oil Company while in control of the Midwest Company, and fraud upon minority stockholders. Violation by the Standard Oil Company of various contractual obligations incurred while in control of the Midwest Company and growing out of this sale are claimed. The Standard Oil Company also is alleged to be liable for mismanagement and for damages growing out of certain stock transactions in which it is alleged that the Standard Oil Company took advantage of its situation while in control of the Midwest Company.

The principles of law involved in the application of rule 58 have many times been discussed, and nothing will be gained by attempting an analysis of the different decisions. The quite recent pronouncement by the Supreme Court in the Sinclair Refining Co. v. Jenkins Petroleum Co. Case, 289 U. S. 689, 53 S. Ct. 736, 77 L. Ed. 1449, 88 A. L. R. 496, leads me to the conclusion that a broader and more liberal construction of the rule than formerly is now favored by that court. Judge Brewster, in Byron Weston Co. v. Brown Paper Co. (D. C. Mass.) 13 F.(2d) 412, 413, had previously said: "In a recent case in this district, it has been suggested that as the rule was remedial, it was entitled to liberal construction, thereby resulting in 'great economies for litigants, counsel, and court.' Johnson Automatic Scale Co. v. Ginn et al., 10 F.(2d) 793."

I think that the party objecting to interrogatories should have the burden of showing quite clearly the impropriety of any interrogatory claimed to be objectionable, and that in case of doubt it should be answered. However, I do not think the fundamental principles mentioned by Judge Bingham in Kinney v. Rice (D. C. Mass.) 238 F. 444, 445, have been changed. The following is quoted from his opinion, omitting citations:

" 'The plaintiff's right of discovery extends only to facts resting in the knowledge of the defendant or. documents in his possession material to the support of the plaintiff's case, and the defendant's correlative right of discovery, only to facts and matters material to his defense, and neither is entitled to discovery of an inquisitorial character as to the ground of action or defense of the other, although, as theretofore, the right of such discovery as to matters material to the cause of action or defense of the interrogating party will not be defeated by the fact that such matters also involve the ground of defense or action of the interrogated party'; and * * * that 'to the extent that discovery may be granted . as to material matters of fact it must be limited to inquiry as to the material facts, and does not extend to a disclosure of evidence or of facts which merely tend to prove material facts'; * * * that a disclosure of the 'ultimate facts only' can be required; * * * and that, inasmuch as the plaintiff's right does not extend to the discovery of the manner in which or the evidence by means of which the defendant's case is to be established, * * * he is also precluded from ascertaining the names of the witnesses by whom his adversary proposes to prove his case."

"All the facts which the plaintiff seeks to discover must be material. The defendant is never compelled to disclose matters which are immaterial as evidence to support the plaintiff's contention. He is never obliged to answer vexatious or impertinent questions." (Pomeroy's Equity (3d Ed.) § 201.)

Judge Dodge, also in this circuit, in Wolcott v. Nat. Elec. Co. (D. C.) 235 F. 224, 228, uses the following language:

"The disclosure intended by rule 58 is to be, in my opinion, of the ultimate facts only, material to the support or defense of the cause * * * and not of mere evidence, or of facts tending to prove the nature of the case or the facts upon which it is based."

"The plain object of this Rule is to dispose of issues in advance of the trial by compelling the parties to make admissions. * * * There is no reason why the parties should wait until the day of trial and then bring in witnesses to prove facts that the parties may be compelled to admit under oath prior to the trial." Note in Hopkins' Equity Rules (8th Ed.).

Interrogatories 1 to 9, inclusive, may be considered together. Interrogatories 1 and 7 are not objected to.

■ Interrogatories 2, 3, 4, 5, 8, and 9 are objected to on the ground that the information sought has been given in the answer, or "sufficiently given" in the answer, and also on the ground that they do not seek discovery of any ultimate, material fact, but only seek to lay a foundation for a possible, but not necessary, inference.

Interrogatory 6 is objected to on the ground that it seeks discovery of no ultimate, material fact, and also because it constitutes a fishing excursion into the private affairs of certain directors.

The interrogatories in this group are all directed toward questions of interlocking directorships, stock control, and domination of one corporation by another. Control and domination are not so much facts as the necessary result of facts. Ownership of a certain number of shares of stock is a fact. That fact, with others, such as the total number of shares existing, results in control. The ultimate material facts are the names, the figures, the acts, the votes. They are what is claimed by the plaintiff to be facts which give him a cause of action. Whether the different facts all fit together to make the picture claimed is another matter that can be settled after we see all the pieces.

The nine questions in this group cover generally names of directors, their ownership of stock and official positions in the different companies at different dates, whether the stock owned by the Standard in the Midwest Company was voted for these directors, etc. These are material facts, admissible in evidence, ultimate facts which, with others, the plaintiff claims give him a cause of action, and I think they come within the scope and purpose of the rule.

It is possible that questions 2 and 3, as to whether the Standard "caused" certain persons to be nominated and elected directors in the Midwest Company, if standing alone, might be objectionable as rather vague and involving an inference, but they are so much involved with the other questions in the group that it is not practicable to make a distinction. They are also probably covered by the answer, but I disregard that as the group of questions should really be treated as a whole.

As to interrogatory 6, which asks for the amount of stock in the Standard owned by the directors in the Midwest Company, I do not regard as unnecessarily inquisitorial. Stock ownership is a matter of record, and it may also be very material.

So far as there are objections to the first nine questions, the objections are overruled.

The next ninety questions are really the same group of questions as above, applied to the nine years following, and are in the same category as the first nine questions.

■ Interrogatory 100: The information asked for in this interrogatory is fully given in the answer and need not be further considered.

■ Interrogatories 101 to 116, inclusive: These ask for information as to whether, after the sale by the Midwest to the Standard Company, certain directors of the Midwest Company became officers or employees of the Standard.

Some of these questions are said to be covered by the answer, but the defendant suggests that they are all objectionable as not relating to ultimate facts. I take the view that the matters inquired of are the facts which, with others, are relied upon by the plaintiff as a basis for his suit, and, probably, in a case of alleged fraud, admissible. Objections to this group of questions are overruled.

■ Interrogatories 117, 118, and 119 relate to the organization and activities of the Stanolind Company, and I see no objection to them.

Interrogatories 120 to 123, inclusive, are not objected to.

Interrogatories 124 to 156, inclusive, are objected to as irrelevant, and on the ground that they do not seek a discovery of ultimate facts. These interrogatories are also directed towards showing the existence of control by one corporation of another, and come within the category of similar interrogatories above mentioned, and consequently should be answered.

■ Interrogatories 157 to 176: These interrogatories are objected to on various grounds; that they constitute a "fishing excursion" to uncover evidence or the names of witnesses; that many are wholly immaterial; that the answer discloses all that can be said in answer to 162 to 165, namely, that there was no such

agreement as is referred to in those questions; that they do not seek to discover the ultimate facts and really constitute an attempt at an examination and cross-examination. I think 157 to 161, inclusive, are objectionable, and the objections are sustained.

As the answer discloses that there was no written agreement referred to in 162 to 165, no further answer seems to be required.

■ Interrogatories 166 to 173, inclusive, are devoted to inquiries as to what correspondence there was between different parties and asking in whose possession the correspondence is, if any exists. Such questions I regard as objectionable. Referring to similar questions, Judge Tuttle, in Wright v. Dodge Brothers (D. C.) 300 F. 455, 457, states that the court in that district early adopted a liberal attitude in relation to the construction of rule 58, but goes on to say: "The other interrogatory of the defendant to which plaintiff objects consists of a request that plaintiff 'quote or attach copies of all letters written by' plaintiff to defendant, 'and all received by' plaintiff from defendant, 'during the period in controversy.' This can scarcely be called an interrogatory, but is rather in the nature of a demand for the production of correspondence. Whatever its effect would be, if intended or treated as a subpoena duces tecum, or as a notice to produce for the purpose of laying a foundation for the introduction of secondary evidence, it is entirely too broad and indefinite to serve as an interrogatory for the discovery of facts or documents 'material' to the issues involved in this case."

The objections to interrogatories 166 to 173, inclusive, are sustained.

■ Interrogatories 174, 175, and 176 ask for the names of all the officers of the different corporations who assented to the sale of the property. I am somewhat doubtful about these questions, but, being doubtful, will overrule the objections.

■ Interrogatory 177 asks whether one of the defendants received from the plaintiff a certain letter a copy of which is attached. I think rule 58 should not be used for such a procedure connected with evidence. The letter, if admissible, could be proved at the trial in the ordinary way. The objection is sustained.

■ Interrogatories 178 to 180, inclusive: The answer admits that the statement substantially as claimed by the plaintiff was made by the president of the defendant "Midwest Refining Company." Inquiry is made as to the original of the admitted statement. An answer to the interrogatories may develop that there is no such thing as an original, as indicated in comments of counsel, but the interrogatory may be answered.

Interrogatories 181 to 209, inclusive, appear to relate wholly to the question of allowance of interest on a large open account which the Midwest Company is alleged to have had against the Standard Company.

■ Interrogatories 181, 182, and 183 appear to assume the existence of a "complete statement of the account of the Standard with the Midwest," and inquiry is made as to its whereabouts. There is no showing that any such statement exists and counsel for defendants in his brief has stated that there is no such statement, and further that to make a statement would require the work of many clerks for many weeks, involving an enormous volume of figures, claimed by counsel to be of no use at the trial. At any rate, on the present showing I think these three questions should be excluded.

No objection is made to 184 to 188, inclusive.

■ Interrogatory 189: This asks whether the board of directors of the Midwest Company authorized the adjustment of interest that is questioned. I think to ask an admission of this kind is proper and an aid in simplifying the issues.

■ The next interrogatory, asking who was present at the meeting of directors, when it was held, how the votes were cast, and asking that a copy of the record be attached, I think is objectionable, although the mere fact of the authorization is not objectionable. The record is a matter of evidence which can be produced at the trial.

The same principle requires an answer to interrogatories 191 and 193, and requires the rejection of 192 and 194.

■ Interrogatories 195 to 202, inclusive, involve a search for evidence, asking for conversations, communications, and correspondence in general, and are all objec-

tionable as being too general and indefinite. The same ruling applies as to 166 to 173, above.

■ Interrogatories 203 to 209, inclusive, ask the intention of the defendant corporation, and also ask for conversation and correspondence. The objections to these are sustained.

Interrogatories 210 and 211: 210 asks whether there is in the possession of the defendants data showing estimated amount of oil recoverable from leaseholds and lands of the Midwest Company embraced in the sale.

It is difficult for me to see the pertinence of such reports containing estimates, but it is possible that they may be admissible in some situation or claim not apparent at this stage of the proceedings. Whether they should be ordered produced or not is another matter involving more definitely the materiality.

■ I find two distinctive parts of rule 58 affecting documents. In the first part of the rule there is a provision whereby one party may discover whether the other had documents material to the support of the first party's cause. The party inquired of either has or he has not such documents. If it develops by the answers that he has, then the next to the last paragraph of the rule applies and "the court, * * * upon motion and reasonable notice, may make all such orders as may be appropriate * * * to effect the inspection or production of documents in the possession of either party and containing evidence material to the cause of action." Judge Learned Hand, in Pressed Steel Car Co. v. Union Pacific R. Co. (D. C.) 241 F. 964, 967, puts it thus: "If the defendant can be brought to acknowledge the possession of any documents which appear to be pertinent to the issues, it will be required to produce them, but not until it does. Any other rule would enable the plaintiff to fish among all the documents which the defendant may have for the purpose of picking out those on which it chooses to sue. Such a course is wholly unauthorized, not only under the old practice * * * but equally under rule 58, which requires a party to produce only those documents which contain evidence material to the case or defense of his adversary."

Under that theory of the rule, the matter of inspection or production is taken up after it is ascertained whether the documents in question are in the possession of the party inquired of. Their materiality can then also be considered.

■ On that theory, interrogatory 210 is admitted and 211 rejected. Also 212 is admitted and 213 rejected; 214 is admitted and 215 to 225, inclusive, rejected. Practically all these last questions ask if the documents referred to show certain things. I think that is clearly objectionable. It should first be ascertained whether the documents are in the hands of the defendant. They should either be produced or not produced. If produced, they will speak for themselves as to what they contain.

Also, under the same theory, and not at this stage passing on the admissibility of the documents and statements referred to, but for the purpose of simplifying the issues if possible, and resolving doubts in favor of the interrogating party, 226 is admitted and 227 rejected; 228 admitted and 229 rejected.

■ Interrogatories 230 to 232, inclusive, asking for definite information as to the number of wells and the number of acres of land owned on certain dates, I think should be answered.

■ Interrogatory 233 asks for estimates of potential production. This is a matter of opinion only and not a fact, and I sustain the objection.

I overrule the objection to 234; I sustain it as to 235.

Interrogatory 236 may be answered. Objection is sustained as to 237.

■ Interrogatory 238 is objectionable as being too general and indefinite, simply asking what data one of the defendants has. The objection is sustained to this interrogatory and also to 239, 240, and 241.

■ Interrogatories 242 and 243 are directed to the question of value of property alleged to be sold for an inadequate consideration, and I think should be answered.

Interrogatories 244 to 251, inclusive, are mildly objected to by the defendant, and it is stated that the objection will be withdrawn if the court sees any value in the material referred to. In the light of that statement, 244 to 251, inclusive, may be answered.

934

In the light of general principles hereinbefore adverted to, I think interrogatories 252, 253, 254, 255, 256, and 257 should be answered.

I think interrogatory 258 is improperly phrased. It may be changed to inquire as to whether the defendants have in their possession records showing the expenditure of the Midwest for explorations for the year 1922 and each succeeding year. As the possession of the records is asked for, interrogatory 259 need not be answered, as the records will speak for themselves if they are ordered produced.

Interrogatories 260 to 265, inclusive, refer to the matter of the management contract between the Midwest and the Standard companies. Defendant's counsel say they have no objection to producing a copy of the contract. Consequently, 260 and 261 should be answered. Interrogatories 262 and 263 refer to payments made under contract, and I think should be answered. Interrogatory 264 is objectionable as too general and indefinite. Interrogatory 265 involves the question of interest again, and should be answered.

Under principles hereinbefore mentioned, 266 should be answered; 267 and 268 rejected.

Interrogatory 269 should be answered; 270 and 271 rejected.

Interrogatories 272 to 288, inclusive, all relate to the same transaction which is largely covered by the answer to the bill. Nevertheless, they may be answered. The same situation exists as to interrogatories 289 to 295, inclusive, all of which relate to another transaction; and these questions may be answered.

The same situation exists in 296 to 304, inclusive. Those questions may be answered.

Interrogatories 305 to 307, inclusive, are objectionable as being directed to conclusions and purposes or mental states, rather than to actual facts. The same statement applies to 308 to 310, inclusive, the objections to which are sustained. The same objections apply to 311 to 313, inclusive.

Interrogatories 314 to 317, inclusive, are objected to and excluded for the same reason mentioned in connection with interrogatory 171.

Interrogatories 318 to 323, inclusive, are general inquiries seeking evidence, and are not directed to ultimate material facts, and are rejected.

Interrogatories 324 to 334, inclusive, are inquiries directed to definite facts, the pertinence of which is not clear at this stage of the proceedings; but resolving doubts in favor of the interrogator objections to them are overruled.

Interrogatories 335 to 338, inclusive, are attempts to prove a letter in a way that I think is not authorized, and 335 to 340, inclusive, may be excluded. Interrogatory 341 asks for general correspondence, and objection to that interrogatory, as well as 342 and 343, is sustained.

Interrogatory 344 asks whether a certain described document is in the possession of the defendants, and may be answered.

Interrogatories 345 to 354, inclusive, appear to assume the existence of the document referred to in 344, and are excluded.

Interrogatories 355 to 368, inclusive, relate to the personnel of directorships during different years, and should be answered.

In view of the disposition of some of the other interrogatories and on general principles, 369 to 372 are excluded.